Estate of Louis H. Rowe, Deceased, H. Lewis Brown, Edward C. Rowe and W. Lee White, Executors v. Commissioner.
Estate of Louis H. Rowe, Deceased v. Commissioner
Docket No. 25531.
United States Tax Court
1952 Tax Ct. Memo LEXIS 244; 11 T.C.M. (CCH) 415; T.C.M. (RIA) 53220; April 24, 1952
*244 Held, unpaid balance of loans made by stockholder to wholly-owned corporation not deductible as business bad debt in year of liquidation of corporation when value of corporate assets are not shown to be less than the balance of the debt. H. Lewis Brown, Esq., for the petitioners. Joseph F. Rogers, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency in the decedent's income tax for the year 1944 of $9,134.66. The sole issue here is whether decedent is entitled to a deduction of $29,304.57 for a bad debt in 1944. Findings of Fact The facts stipulated are found accordingly. The petitioners are the executors of the Estate of Louis H. Rowe, who died January 31, 1951. The decedent, a practicing attorney who resided in New York City, *245 was interested in farming in upstate New York. In October, 1925 Rowe's Ranch, Inc., sometimes hereinafter referred to as the corporation, was incorporated under the laws of New York. This corporation was wholly-owned and controlled by Louis H. Rowe. The corporation acquired title to several farms. The "Fiske Farm" and "Lyon Farm" of Naples, New York, and the "Dantz Lot" in Cohocton, New York, were conveyed to Rowe's Ranch, Inc. on November 5, 1925, by Louis H. Rowe. The "Home Place" in Atlanta, New York, was conveyed to the corporation on November 7, 1925, for $15,000 by Ellen Rowe. The "Hamlin Farm" also of Atlanta, New York, was conveyed on January 8, 1926, to the corporation by Hamlin for $10,000. The "West Farm" was received in exchange for the "Lyon Farm" in 1934. Louis H. Rowe owned or held interests in several farms in his individual capacity. The "Corey Place" in Cohocton, New York, was purchased by the decedent and his brother, William L. Rowe, in 1917. In 1920, Louis H. Rowe quitclaimed his one-half interest to his brother. The "Avoca Farm," Avoca, New York, was bought by Rowe in September, 1934, for $750. The "Weyland Road Property," Steuben County, New York, was purchased *246 by the decedent in 1922. Rowe bought the "Polmanteer Farm" in 1935, and the "Metzinger Farm" in Naples, New York, also in the 1930s. Louis H. Rowe visited the various farms owned by himself or the corporation, which were operated chiefly by tenant farmers, approximately six to twenty times a year, remaining from two days to two weeks at a time. He was sometimes accompanied by his law associate and by his chauffeur. The "Home Place" consisted of 108 acres. Before it was conveyed to Rowe's Ranch, Inc. in 1925, the decedent had spent approximately $40,000 in improving it by the construction of a house which had cost that amount. In 1931, $12,500 was received by Rowe's Ranch, Inc. from the mother of L. Corrin Strong and at the same time the corporation executed a deed to the "Home Place" to L. Corrin Strong. This deed was not recorded. L. Corrin Strong never took possession of the property. Rowe's Ranch, Inc. continued to operate the farm and to pay the taxes on the property until 1946. The books of the corporation carried the transaction as a sale but no indication of the transaction is found on the 1931 corporate income tax return. The decedent's law associate was of the opinion that *247 the unrecorded deed was actually a mortgage. The decedent also received an additional $12,500 from Strong's mother, which was secured by the collateral of stock in the Lincoln Realty Company. The latter transaction was settled in 1946. In 1946 the deed from Rowe's Ranch, Inc. to Strong was recorded. Strong then conveyed the property to Louis H. Rowe personally and the decedent executed a bond and mortgage to Strong for $12,500. William L. Rowe, the decedent's brother, occupied the "Home Place" until his death in 1933, and his family has continued to occupy it since then. William L. Rowe looked after the farm operations until his death, after which the decedent performed this task. The books of Rowe's Ranch, Inc., which were kept by Louise A. Johnson, the decedent's secretary, who died between 1943 and 1945, showed that the corporation, between 1925 and 1944, borrowed $135,652.34 from the decedent, of which $94,647.77 was repaid to him. The unpaid balance was computed at $41,004.57, of which $26,225 is represented by two demand notes of $18,240 and $11,729.45, executed in 1931 by Louis H. Rowe as president of the corporation, payable to himself individually. Of the total $29,969.45 *248 evidenced by the two notes, $3,744.45 represented interest. Checks were drawn on the Chase National Bank of the City of New York by the decedent or his agent to the order of Rowe's Ranch, Inc., as follows: Year
Amount
1933
$1,421.00
1934
1,430.44
1935
2,350.50
1936
2,777.00
1937 (through Dec. 14th)
1,395.00
$9,373.94
The Certificate of Incorporation of Rowe's Ranch, Inc. was dissolved on December 15, 1937, pursuant to section 203-A of the Tax Law of New York. * During the years 1925 through 1937 Rowe's Ranch, Inc. filed corporate income tax returns which do not reflect the debts owed to Louis H. Rowe by balance sheet or otherwise. A corporation known as Reim's Realty Corporation was organized by the decedent with Rowe's Ranch, Inc. as sole stockholder except for qualifying directors' shares. In liquidating Rowe's Ranch, Inc. in 1944 the property then held by Rowe's Ranch, Inc. was conveyed to Reim's Realty Corporation for shares of stock in the new corporation. This stock was then distributed to Louis H. Rowe, the sole stockholder *249 of Rowe's Ranch, Inc., as a final liquidating dividend. In 1944 the "Fiske Farm" and the "Hamlin Farm" were owned by Rowe's Ranch, Inc. at the time of liquidation. The value of these farms was $4,000 and $8,000, respectively, the prices at which the properties later sold. The "Avoca Farm" was never operated as a farm. Beside his interest in the practice of law and in the farms in New York State, the decedent had interests in the coal business, real estate in New York City, and at one time he was interested in the fruit business. In his individual income tax return for 1944, Louis H. Rowe did not list any income from farming. In his return for that year the decedent claimed a bad debt deduction of $29,304.57. An explanation of this deduction was given on the return as follows: "BAD DEBTS "During the years from 1926 to 1944, the taxpayer advanced to Rowe's Ranch, Inc. a New York Corporation, sums of money aggregating a net amount, after repayments, of $41,004.27. Rowe's Ranch, Inc. was fully and finally liquidated in 1944, and the taxpayer received from said corporation a first and final liquidating dividend of the value of $11,700.00; leaving a bad debt, chargeable in 1944, *250 of $29,304.57." Opinion VAN FOSSAN, Judge: In this proceeding the petitioners seek a deduction as a business bad debt of $29,304.57 in the year 1944 under section 23 (k) (1) of the Internal Revenue Code. [1]
The petitioners state in their brief that through oversight the value of the final liquidating dividend from Rowe's Ranch, Inc. to the decedent was not properly *251 computed and that the credit on the debt should have been $14,000 instead of $11,700. This correction reduces the balance of the debt to $27,004.57. In determining the amount of the debt owed to Louis H. Rowe by the solely-owned corporation, the petitioners have subtracted the amounts repaid to the decedent on account of the loans he had made. The record of the loans and repayments was kept by Louis H. Rowe's secretary, who died prior to the decedent. The record of the debt could not, therefore, be authenticated as correct by any person familiar with the decedent's loan transactions. Of the total amounts of the loans, $26,225 is represented by two demand notes, the remainder of the debt being evidenced only by the company records. In the year of liquidation of Rowe's Ranch, Inc., 1944, the properties owned by the corporation were the "Fiske" and "Hamlin" farms. The "Home Place" was the subject of an unrecorded transaction between the corporation and L. Corrin Strong in 1931. A deed had been given to Strong in 1931 but it was not recorded until 1946, at which time Strong deeded the property to the decedent in exchange for a mortgage. The "Home Place" was operated as a farm by decedent's *252 brother until 1933 and later by the decedent for Rowe's Ranch, Inc. Taxes on the property were paid by the solely-owned corporation. Strong never took possession of the "Home Place." William L. Rowe's family resided on the property and continued to do so at the time of the hearing. Rowe's Ranch, Inc. had received $12,500 in 1931 in consideration of the deed which was not reflected in its income tax return for that year. Whether the transaction be considered a sale which was never consummated or a mortgage, it is apparent that Rowe's Ranch, Inc. retained a substantial interest in the "Home Place" after 1931. The continued operation of the farm, its use as a residence by the family, the payment of taxes by the corporation, the lack of transfer of possession to Strong, and the subsequent recording of the mortgage in 1946 indicate that the decedent and the corporation maintained a continuing interest in the property despite the deed in 1931. When, in 1944, the corporation was liquidated, the "Home Place" was not included in the valuation of corporate assets for the purpose of determining the debt owed to decedent after liquidation. Two years later Louis H. Rowe was deeded the title to *253 the property by Strong and mortgaged it back to Strong. Members of the family of decedent's brother continued to occupy the house until the time of hearing. At no time during the period 1931-1946 did the decedent or the solely owned corporation treat the property as having been sold or otherwise disposed of. In any fair evaluation of the liquidating dividend in 1944, we are of the opinion that the value of the corporation's interest in the "Home Place" must be included. Thus at the time of the liquidation of Rowe's Ranch, Inc., that corporation owned not only the "Hamlin" and "Fiske" farms but also a valuable interest in the "Home Place." Whether designated as that of a mortgagor or otherwise, the equitable interest of Rowe's Ranch, Inc. in the 108-acre farm which had cost $15,000 and the house which had been built at a cost of $40,000, apparently was of a value at least equal to the unpaid balance of the debt owed the decedent. Petitioners have not established the contrary. For this reason, the petitioners' claim must fail. Decision will be entered under Rule 50. Footnotes
*. Note: After this dissolution the corporation continued to function to a limited extent until final liquidation in 1944.↩
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * *
(k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.↩